UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WILLIAM McCULLOUGH,                                        **DECISION AND ORDER**

              Petitioner,                                    6:21-CV-06471 EAW

   v.

JULIE WOLCOTT[1],

          Respondent.

_____

## I.      INTRODUCTION

*Pro se* petitioner William McCullough ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Dkt. 1).  Petitioner challenges the constitutionality of the judgment entered against him on June 30, 2016, in New York State, Erie County Court (Case, J.), following a jury verdict convicting him of second-degree burglary (New York Penal Law ("P.L.") § 140.25(2)).[2]  Petitioner is serving his sentence on this judgment.[3]  For the reasons below, the request for a writ of habeas corpus is denied, and the petition is dismissed.

_____

[1]      The Clerk of Court is directed to amend the caption as above to reflect the correct spelling of Respondent's last name.

[2]      Page citations to Petitioner's and Respondent's pleadings are to the pagination automatically generated by the Court's case management and electronic filing system (CM/ECF) and located in the header of each page.

[3]      *See* https://nysdoccslookup.doccs.ny.gov/ (results for DIN 16B2076 (last accessed August 7, 2024)).

II.    **BACKGROUND**

    A.    **State Court Proceedings**

        1.    **Pre-Indictment Matters**

Petitioner's conviction arises from a break-in that occurred at 73 Theodore Street in the City of Buffalo on the morning of January 9, 2014.  Petitioner was arrested at the scene.

On February 24, 2014, the prosecutor, Erie County Assistant District Attorney Patrick Shanahan, sent a letter to Petitioner's then-attorney, James Quinn Auricchio ("pre-trial counsel") extending a pre-indictment a plea offer.  (*See* 2/24/14 Letter from Patrick Shanahan, Esq., Exhibit ("Ex.") B to Petitioner's First Motion to Vacate the Judgment Under New York Criminal Procedure Law ("C.P.L.") § 440.10 ("first 440 motion"), Respondent's Exhibit ("Resp't Ex. D")).[4]  Pursuant to the offer, Petitioner would waive indictment; plead guilty to attempted second-degree burglary (P.L. §§ 110.00, 140.25(2)), a class D violent felony; and waive his appellate rights.  (*Id.*).  The prosecutor stated that the judge's "sentencing options will remain unlimited."  (*Id.*).

---

[4]    Respondent's Exhibit A consists of the Erie County District Attorney's Office's original case file and the original state court transcripts.  Citations to hearing transcripts are formatted as (month/day/year Tr. at page number).  Citations to the trial transcript are formatted as (TT: page number).  All transcript citations are to the original pagination.  Respondent's Exhibits B through H are in a separately bound document.  Respondent's Exhibits B through G consist of the pleadings and orders filed in connection with Petitioner's direct appeal and collateral post-conviction motions.  Respondent's Exhibit H consists of selected trial exhibits.  Respondent's Exhibits A through H were manually filed by Respondent in connection with the answer to the petition.

Pre-trial counsel conveyed the plea offer to Petitioner in a letter dated February 27, 2014.  (*See* 2/27/14 Letter from James Quinn Auricchio ("Auricchio Letter"), Ex. A to First 440 Motion, Resp't Ex. D).  Pre-trial counsel concluded that based on his review of Petitioner's criminal history, Petitioner would have to be sentenced as a second violent felony offender if he accepted the plea, and the judge would have to impose a determinate sentence of between seven and 15 years' imprisonment plus five years' post-release supervision.  (*Id.* at 2).  After reviewing the prosecution's evidence (*id.* at 2-3), pre-trial counsel concluded that it was "very likely" Petitioner would be convicted of second-degree burglary.  (*Id.* at 3).  Pre-trial counsel advised him to accept the offer.  (*Id.*).  Pre-trial counsel explained that if Petitioner accepted the plea offer, his sentencing exposure under the second violent felony offender statute would be five to seven years in prison versus seven to 15 years in prison if he was convicted after trial of the original second-degree burglary charge.  (*Id.* at 2, 3).

At an appearance on March 6, 2014, before Erie County Court Judge Sheila DiTullio, the prosecutor noted that the grand jury had returned an indictment.  (3/06/14 Tr. at 2; *see also* Petitioner's Appellate Brief at 2 (noting that Petitioner was charged under Erie County Indictment No. 2014-0103 with second-degree burglary in violation of P.L. § 140.25(2)),[5] Resp't Ex. B).  The prosecution also confirmed that the plea offer extended on February 24, 2014, remained available "temporarily until this case reports out."

---

[5]     "A person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when: . . . [t]he building is a dwelling."  N.Y. Penal Law § 140.25(2).

(3/06/14 Tr. at 3-4).  Petitioner stated that he had discussed the terms of the plea with his attorney and had decided to reject it.  (*Id.* at 4).

Later that month, pre-trial counsel was relieved of his representation following a breakdown in the attorney-client relationship, and a new attorney, David Silverberg, Esq. ("trial counsel"), was assigned to represent Petitioner.  (3/28/14 Tr. at 2-3).

Petitioner was arraigned on April 1, 2014, before Erie County Court Judge Kenneth F. Case ("trial court").  (4/01/14 Tr. at 2).  The prosecutor urged the trial court to maintain the bail amount at $100,000, noting that Petitioner had "five prior felony convictions, three of which are violent"; and that he "stands indicted for another violent felony. . . ."  (*Id.* at 4).

On May 8, 2014, trial counsel wrote a letter to Petitioner stating that the prosecutor had ordered Petitioner's records from the New York State Department of Corrections and Community Supervision and local jails to determine whether he should be considered a persistent violent felony offender[6] and prosecuted as such.  (5/08/14 Letter from David Silverberg, Esq. at 1, Ex. D to First 440 Motion, Resp't Ex. D).  Trial counsel stated that

---

[6]     P.L. § 70.08 defines a persistent violent felony offender as "a person who stands convicted of a violent felony offense as defined in subdivision one of [P.L.] section 70.02 . . . , after having previously been subjected to two or more predicate violent felony convictions as defined in paragraph (b) of subdivision one of section 70.04 of this article." N.Y. Penal Law § 70.08(a).  "When the court has found . . . that a person is a persistent violent felony offender the court must impose an indeterminate sentence of imprisonment, the maximum term of which shall be life imprisonment." *Id.* § 70.08(2).  The minimum period of imprisonment is determined in accordance with P.L. § 70.08(3).  *Id.*  For a class C violent felony, the minimum period must be at least 16 years and must not exceed 25 years; for a class D violent felony, the minimum period must be at least 12 years and must not exceed 25 years.  *Id.* § 70.08(3)(b), (c).

"[n]o reduced plea will be offered by" the prosecution and that if Petitioner was "not prosecuted as a [p]ersistent [v]iolent [f]elony [o]ffender, [he] would face a determinate prison sentence as a [s]econd [v]iolent [f]elony [o]ffender of between seven and fifteen years, whether it be by [p]lea or after [t]rial." (*Id.*).

At an appearance on May 27, 2014, the prosecutor confirmed that based on his review of Petitioner's jail and prison records, Petitioner would be a persistent violent felony offender under P.L. § 70.08 if he was convicted of the instant second-degree burglary offense, a class C violent felony. (5/27/14 Tr. at 2-3). The trial court noted that "any plea from the DA's Office if they were inclined to even offer a lesser plea, would still be a D violent," so that "in either case he would be a persistent violent felon." (*Id.* at 3). The prosecutor confirmed that was accurate and cautioned that he was "not representing that a [plea to a] D violent is available." (*Id.*). The prosecutor stated that it was "[his] understanding [trial counsel] would talk to his client and [they]'ll go from there." (*Id.*).

At a pre-trial conference on September 17, 2014, the trial court noted that trial counsel needed more time to research Petitioner's prior felony convictions to determine whether "he's a persistent or persistent violent or none of the above or whatever." (9/17/14 Tr. at 9). The prosecutor stated that the parties had been discussing alternative dispositions and that the "only possible disposition . . . would be the D violent felony with [Petitioner] admitting his status as a persistent violent felony offender." (*Id.* at 10). The prosecutor reiterated that he was "not representing that that plea would be available," adding that "if [they] are going to have that discussion, [it] needs to take place by October 15." (*Id.*). The trial court asked if the prosecutor would keep the possibility of a plea disposition open and,

without making any promises, "allow [trial counsel] until that date for that possibility."
(*Id.* at 10-11).  The prosecutor responded, "of course."  (*Id.* at 11).  The trial court stated
that although "all sentencing options" likely "would have to remain open" if the prosecutor
"reduced the plea," it "would be inclined to sentence [Petitioner] to the minimum" if he
accepted the plea.  (*Id.*).

At the final pre-trial conference on November 14, 2014, neither the trial court nor
the parties mentioned any further plea discussions.  (*See* 11/14/14 Tr. at 1-5).

### 2.    Trial and Verdict

Jury selection began on November 17, 2014.  (*See* 11/17/14 Tr. at 2).  Due to
inclement weather, the courthouse was closed for the next four days.  (11/24/14 Tr. at 2-
3).  When the parties appeared again in court, trial counsel moved for a mistrial.  (*Id.* at 3-
4).  The prosecution took no position on the request, and the trial court granted a mistrial.
(*Id.* at 4-5).  The new trial was scheduled for February 23, 2015.  (*Id.* at 6).

At the second trial, Buffalo Police Department ("BPD") Officer Mark Alberti
("Alberti") testified that he and his partner, Ann Devaney, responded to a call concerning
a burglary in progress at 73 Theodore Street at about 8:30 a.m. on January 9, 2014.  (T:
190-91).  Alberti observed an open door on the side of the house and a broken basement
window.  (T: 192).  After entering through the open door, Alberti immediately observed a
black male in the upstairs hallway.  (T: 192-93).  Despite Alberti's command to stop, the
man went into a side room off the hallway.  (T: 193).  Alberti apprehended the man, whom
he identified as Petitioner, and searched him.

During his search of Petitioner, Alberti recovered several items from his front pants-pocket—a small circular mirror and a small plastic box containing a few years-of-service pins from the Moog Corporation. (T: 193-95). Alberti arrested Petitioner and charged him with second-degree burglary. (T: 196).

Alberti testified that he was familiar with the activity known as "scrapping," which he defined as "the scavenging of any property of any value." (T: 200). In his experience, scrapping can happen at the roadside or inside residences. (T: 200-01). Alberti testified that when a person "scrap[s] in someone's home," it is called "[a] burglary." (T: 201).

Alberti described the interior of 73 Theodore as "all ransacked," with "flipped over" dressers and "opened up" cabinets. (T: 195; *see also* T: 197-200 (identifying and describing photos of the house)). The electricity and heat were working, and lights were on throughout the house. (T: 195-96).

The owner of 73 Theodore, Dominic Zaccaria ("Zaccaria") testified that he had lived there for between 20 and 22 years. (T: 216). He and his then-wife bought the home around 1990; after they divorced in 2010, he got the house. (T: 217). He paid off the mortgage. (T: 217-18). He owned no other properties besides 73 Theodore, and he got his mail there. (T: 217). He was current on his payments for all local taxes as well as water, garbage, gas, electric, and cable services at 73 Theodore. (T: 217-19).

In the latter part of 2013, Zaccaria was hospitalized for four days due to a heart condition and was unable to return to work for over eight weeks. (*Id.*). He had extensive physical limitations; for instance, he could not lift or go up the stairs, and "walking short distances was difficult." (T: 220). He received help from his girlfriend, who lived in

Clarence, New York.  (*Id.*).  He stayed over at her house and, when he was not staying with her, he stayed at 73 Theodore.  (T: 221).

On the morning of January 9, 2014, Zaccaria received a call from the prosecutor informing him that his house had been broken into.  (T: 222).  When he returned home, the house was "completely ransacked," and "[e]verything was all over the place."  (*Id.*; *see also* T: 224-26 (identifying photos of the house)).  He had been at 73 Theodore earlier that morning, and the house was not in that condition.  (T: 222).

On cross-examination, Zaccaria explained that he had "boarded up" many of the windows because people "ke[pt] breaking into [his] house."  (T: 234, 243).  However, the doors were open and the "windows [we]ren't all boarded."  (T: 234).  These incidents occurred both before January 9, 2014, and since then.  (T: 235, 243-44).  The "boarding up" was done in the latter part of 2013.  (T: 239).

The prosecution introduced as People's Exhibit 12, and played for the jury, a recording of a two-minute portion of a phone call that Petitioner made from jail to a female acquaintance.  (T: 249, 256-57).  During the call, Petitioner said, "I went out scrapping—you know, collecting copper and stuff.  So they—they got me on that."  (People's Exhibit 12 at 2:11 to 2:19, Resp't Ex. H; *see also* T: 305).

The prosecution rested, and defense counsel made a motion for a trial order of dismissal.  (T: 262-64).  The trial court denied the motion.  (T: 264-65).  Petitioner elected not to testify.  (T: 265).

During the charge conference, defense counsel asked to have the jury instructed on three lesser included offenses—third-degree burglary, second-degree criminal trespass,

and petit larceny.  (T: 272-74).  The trial court granted the request to charge third-degree burglary (P.L. § 140.20),[7] but denied the other requests.  (T: 281).

The jury returned a verdict convicting Petitioner of second-degree burglary as charged in the indictment.  (T: 338-39).

### 3.    Motion to Set Aside the Verdict

Prior to sentencing, the trial court granted Petitioner's request for substitute counsel and assigned Robert Cutting, Esq. ("motion counsel") to help him file a motion to set aside the verdict pursuant to C.P.L. § 330.30 ("330 motion").  (*See* 8/10/15 Tr. at 2-3).

The 330 Motion was filed on December 11, 2015, and was based on newly discovered evidence and ineffective assistance of trial counsel.  (*See* 330 Motion, Resp't Ex. A).  The newly discovered evidence consisted of statements from Zaccaria's neighbor, Tracey Griffin ("Griffin").  (*See* Affirmation of Robert Cutting, Esq. ("Cutting Aff."), 330 Motion (attaching 11/23/15 Griffin Statement ("Griffin Stmt.") and 12/09/15 Griffin Affidavit ("Griffin Aff.")), Resp't Ex. A).  The ineffectiveness claim was based on trial counsel's failure to investigate and call Griffin as a witness at trial.

Motion counsel explained that he had hired a private investigator who spoke to Griffin on November 23, 2015.  (Cutting Aff. ¶¶ 5-7). On that date, Griffin signed a handwritten statement saying that Zaccaria "left the property sometime in September 2013 because of mu[l]ti[p]le times of br[eak] ins."  (Griffin Stmt. at 1).  Motion counsel

---

[7]    "A person is guilty of burglary in the third degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein."  N.Y. Penal Law § 140.20.

subsequently obtained an affidavit from Griffin, in which she asserted that she had resided at 69 Theodore continuously for over 13 years; that her home was directly next door to 73 Theodore, separated only by a narrow driveway; that during the fall of 2013, Zaccaria had "moved out," "taking his clothing . . . but leaving behind his furniture and appliances"; and that Zaccaria "would come by periodically to pick up his mail but was no longer sleeping there at night." (Griffin Aff. ¶¶ 2, 3, 5). Griffin "kn[e]w for a fact that Mr. Zaccaria was not sleeping in that location during the month of January of 2014 due to [her] own personal knowledge and first[-]hand observations as the resident of the house directly next door." (*Id.* ¶ 6). Griffin stated that no one from Petitioner's defense team ever spoke with her. (*Id.* ¶ 7).

On March 4, 2016, the parties appeared for oral argument on the 330 motion. (*See* 3/04/16 Tr. at 3-7). The prosecutor argued that the claims were based on alleged newly discovered evidence outside the record and, as such, were not properly raised in a 330 motion; and that the claims were meritless in any event. (*Id.* at 7-10, 12-14). The trial court denied the motion from the bench (*id.* at 14-16), finding that, among other things, Griffin's affidavit was not "inconsistent at all, really, with what the victim had testified to in the case, which was at the actual time of the burglary[,] he wasn't really sleeping there, but that it was still his dwelling." (*Id.* at 15-16).

The trial court noted that the prosecutor had filed a statement pursuant to C.P.L. § 400.16 seeking to have Petitioner sentenced as a persistent violent felony offender under

P.L. § 70.08.[8]  (C.P.L. § 400.16 Statement, Resp't Ex. A).  The C.P.L. § 400.16 statement indicated that Petitioner previously had been convicted of the following violent felonies in Erie County Court: (1) attempted second-degree burglary on July 31, 1992; (2) attempted second-degree burglary on February 5, 1993; and (3) attempted first-degree robbery on March 21, 2003.  (*Id.*).  The statement further indicated that between the date of his imprisonment for the 1992 conviction until January 9, 2014, the date of the burglary at 73 Theodore, Petitioner had served a total of 13 years and 90 days of imprisonment.  (*Id.*).  The trial court scheduled Petitioner's case for a hearing on his status as a persistent violent felony offender.  (3/04/16 Tr. at 16-17).

### 4.    Sentencing

At sentencing on June 30, 2016, motion counsel explained that his research into the proper classification of Petitioner's prior felony convictions yielded unfavorable results for his client.  Accordingly, Petitioner elected to stand mute as to how he should be classified for sentencing purposes.  (6/30/16 Tr. at 3; *see also id.* at 4-6).  Since Petitioner did not refute any of the allegations in the C.P.L. § 400.16 statement, the trial court granted the prosecutor's request to sentence Petitioner as a persistent violent felony offender under P.L. § 70.08.  (*Id.* at 6).  The trial court imposed an indeterminate term of 16 years to life in prison (*id.* at 13-14), the minimum possible under P.L. § 70.08(3)(b).

---

[8]     C.P.L. § 400.16 sets forth the mandatory procedure in any case where it appears that the defendant stands convicted of a violent felony offense as defined in P.L. § 70.02(1) and has previously been convicted of two or more predicate violent felony convictions as defined in P.L. § 70.04(1)(b).   *See* N.Y. Crim. Proc. Law § 400.16(1).   In such circumstances, the defendant may be a persistent violent felony offender as defined in P.L. § 70.08.  *See* N.Y. Crim. Proc. Law § 400.16(1).

### 5. Direct Appeal

Kristin Preve, Esq. ("appellate counsel") was assigned to represent Petitioner on his direct appeal. Appellate counsel filed a brief asserting that the trial court erroneously refused to charge second-degree criminal trespass as a lesser included offense; trial counsel was ineffective for failing to present a "mistake of fact" defense, i.e., Petitioner believed he was entering a deserted house to take what he believed was abandoned property, thereby negating the intent element of burglary; and the prosecutor's summation shifted the burden of proof and infringed on Petitioner's constitutional right not to testify. (*See* Petitioner's Appellate Brief, Resp't Ex. B).

The Appellate Division unanimously affirmed the conviction on April 26, 2019. *People v. McCullough*, 171 A.D.3d 1497 (4th Dep't 2019). The Appellate Division held that the trial court properly denied the request to charge second-degree criminal trespass (P.L. § 140.15(1)) as a lesser included offense of second-degree burglary (P.L. § 140.25(2)) because there was "no reasonable view of the evidence that [Petitioner] entered the building without the intent to commit a crime therein." *Id.* at 1497 (some quotation marks omitted (quoting *People v. Carter*, 111 A.D.3d 1324, 1324 (4th Dep't 2013)). To reach such a conclusion, the "jurors would have had to resort to sheer speculation." *Id.* (quoting *People v. Clarke*, 233 A.D.2d 831, 832 (4th Dep't 1996)).

The Appellate Division concluded that Petitioner "received effective assistance of counsel inasmuch as 'the evidence, the law, and the circumstances of [this] particular case, viewed in totality and as of the time of the representation, reveal that [his] attorney provided

meaningful representation." *Id.* (alterations in original (quoting *People v. Baldi*, 54 N.Y.2d 137, 147 (1981))).

Lastly, the Appellate Division held that "[t]he prosecutor's remarks on summation were within the broad bounds of rhetorical comment permissible during summations and did not shift the burden of proof," *id.* at 1497 (alteration in original (quoting *People v. Rivera*, 133 A.D.3d 1255, 1256 (4th Dep't 2015))); "were responsive to defense counsel's opening statement," *id.* at 1497-98; and were "fair comment on the evidence," *id.* at 1498. The Appellate Division stated that "[e]ven assuming, *arguendo*, that the prosecutor made certain inappropriate remarks," *id.*, "they were 'not so pervasive or egregious as to deny defendant a fair trial,'" *id.* (quoting *People v. Young*, 153 A.D.3d 1618, 1620 (4th Dep't 2017)).

The New York Court of Appeals denied leave to appeal on August 7, 2019. *People v. McCullough*, 34 N.Y.3d 934 (2019).

### 6.    First Motion to Vacate the Judgment

Represented by appellate counsel, Petitioner moved to vacate the judgment on the basis that pre-trial counsel was ineffective for failing to advise Petitioner that he faced sentencing as a persistent violent felony offender if convicted after trial.  (*See* First 440 Motion, Resp't Ex. D).  Petitioner submitted an affidavit in which he asserted that:

> [g]iven the circumstances of the offense, which involved my entry into a house that I thought was abandoned, I was reluctant to plead guilty. However, had I known that I would qualify as a persistent violent felony offender and receive a sentence of at least sixteen years to life (and up to twenty-five years to life) if I were to go to trial and get convicted as charged, I would never have insisted on going to trial.

> Instead, in order to avoid a sentence with a minimum of sixteen years and a mandatory maximum life sentence, I would have accepted the plea offer and a sentence of five to seven years as a second violent felony offender.
> . . .
>
> But for my attorney's ineffectiveness, I would have accepted the plea bargain, entered the guilty plea, and received a sentence of between five and seven years.

(Petitioner's Affidavit in Support of First 440 Motion ¶¶ 12-13, 15, Resp't Ex. D).

The prosecutor opposed the motion on August 1, 2019, conceding that pre-trial counsel's prediction with regard to the possible sentencing outcomes was "incorrect" but arguing that he did not provide "faulty advice" because he qualified his prediction by generally informing Petitioner that one or more prior felony convictions within the previous ten years could increase the sentence, and that periods of incarceration are included. (Prosecution's Affidavit in Opposition to First 440 Motion at 3 ¶ 11, Resp't Ex. D). The prosecutor also disputed the veracity of Petitioner's assertion that he would have accepted the plea offer had he known of his persistent violent felony offender status. (*Id.* at 4). The prosecutor noted that "[b]y accepting the plea offer, [Petitioner] would have guaranteed being a persistent violent felony offender." (*Id.* ¶ 13).

The prosecutor argued that the only possible advantage to pleading guilty to attempted second-degree burglary, a class D violent felony, was that the minimum sentence would be 12 years to life in prison, versus 16 years to life if Petitioner was convicted after trial of second-degree burglary, a class C violent felony. (*Id.*). The prosecutor contended that Petitioner rationally followed the "more promising path" of proceeding to trial and asserting that 73 Theodore was not a dwelling. (*Id.* ¶ 14). The prosecutor noted that if that

strategy succeeded, Petitioner would have been convicted of third-degree burglary (P.L. § 140.20), a nonviolent felony offense, thereby allowing him to avoid a persistent violent felony offender designation.  (*Id.*).

In a decision and order dated September 10, 2019, the trial court denied the motion. (Order Denying First 440 Motion, Resp't Ex. D).  The trial court held that Petitioner had failed to show that "but for the improper advice provided by the attorney, he would have accepted the plea offer" and therefore had not shown prejudice attributable to pre-trial counsel's performance.  (*Id.* at 2).  The trial court rejected as "not persuasive" the argument that at the time of the plea offer, the prosecutor had not yet investigated, and may never have discovered, Petitioner's prior violent felonies.  (*Id.*).  The trial court reasoned that since "[i]mposition of persistent violent felony offender status is mandatory," any sentence not within "mandatory range for a persistent violent felony offender . . . would be illegal" and outside its authority.  (*Id.* at 2-3 (citing *People v. Griffin*, 72 A.D.3d 1496, 1497 (4th Dep't 2010) (stating that when it became apparent at sentencing that defendant had a prior felony conviction, the prosecution was required to file a second felony offender statement and, if appropriate, the court was then required to sentence defendant as a second felony offender; vacating defendant's sentence, in accordance with the terms of his plea agreement, as a first felony offender; remitting for determination as to whether defendant had a prior felony conviction; and either resentencing defendant as a second felony offender or allowing him to withdraw his plea).  The trial court also found that even if Petitioner's true recidivist status still was unknown at sentencing, "the illegal sentence could be modified at a later time upon motion by the [prosecution] after the error was

discovered." (*Id.* at 3 (citing *People v. Holley*, 168 A.D.2d 992, 993 (4th Dep't 1992) (holding that trial court was required to resentence defendant as second felony offender on prosecution's timely motion after discovery of defendant's previous felony conviction under undisclosed alias; original sentence of defendant as first offender was invalid as matter of law even though authorities did not know at time of sentencing that defendant was second felony offender, particularly since defendant contributed to lack of awareness by using alias and by misrepresenting to his attorney that he had no prior felony conviction))).

Petitioner sought leave to appeal to the Appellate Division. (Petitioner's Application for Leave to Appeal Denial of First 440 Motion, Resp't Ex. E). The prosecution opposed the application. (Prosecution's Affidavit Opposing Leave to Appeal Denial of First 440 Motion, Resp't Ex. E). The Appellate Division denied leave to appeal on November 4, 2019. (Order Denying Leave to Appeal Denial of First 440 Motion, Resp't Ex. E).

### 7.    Second Motion to Vacate the Judgment

On April 30, 2020, Petitioner filed a *pro se* motion to vacate the judgment pursuant to C.P.L. § 440.10 ("second 440 motion"). (Second 440 Motion, Resp't Ex. F). In support of the motion, Petitioner submitted copies of two police reports dated June 16, 2013; and June 24, 2013, obtained via a Freedom of Information Law request. (*See id.*). In the report dated June 16, 2013, the complainant, whose name is redacted, reported a break-in at 73 Theodore and told the police that someone broke his rear basement window, entered the house, and rummaged through his belongings but did not take anything. (*Id.*). In the report

dated June 24, 2013, the complainant, whose name is redacted, told the police that the basement window was broken at his house at 73 Theodore; the inside of his house was ransacked but it was unclear if anything was taken. (*Id.*).

In addition to arguing that these reports constituted newly discovered evidence for purposes of C.P.L. § 440.10(1)(g),[9] Petitioner contended that they should have been disclosed by the prosecutor under *Brady v. Maryland*, 373 U.S. 83 (1963). Petitioner further asserted that trial counsel was ineffective for failing to investigate prior break-ins at 73 Theodore; failing to have an investigator speak to Griffin, the neighbor; failing to oppose the prosecutor's motion *in limine* to preclude the 911 call reporting the January 9, 2014 incident; failing to object to photographs of 73 Theodore based on allegedly inconsistent time-stamps; and failing to present a mistake of fact defense. (*See* Second 440 Motion, Resp't Ex. F).

The prosecution opposed the second 440 motion in an affidavit dated August 11, 2020. (Prosecution's Affidavit Opposing Second 440 Motion, Resp't Ex. F). The trial court denied the motion in a decision and order dated December 3, 2020. (Order Denying Second 440 Motion, Resp't Ex. F).

---

[9]     A trial judge in New York State may vacate a judgment where "[n]ew evidence has been discovered since the entry of a judgment based upon a verdict of guilty after trial, which could not have been produced by the defendant at the trial even with due diligence on his part and which is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant; provided that a motion based upon such ground must be made with due diligence after the discovery of such alleged new evidence." N.Y. Crim. Proc. Law § 440.10(1)(g).

The trial court held that Petitioner's ineffectiveness claims "were directly before the Appellate Division, wh[ich] found that [he] received meaningful representation" and were required to be denied under C.P.L. § 440.10(2)(a).  (Second 440 Order at 2, Resp't Ex. D). As for the "prosecutorial misconduct" claims, which presumably referred to the *Brady* claim, the trial court held that they were "exclusively matters of record and should have been raised on direct appeal and were not."  (*Id.*).  Accordingly, the trial court denied the claim pursuant to C.P.L. § 440.10(2)(c).  (*Id.*).

Finally, the trial court determined that the "[reports] of previous break-ins and a 911 caller's description of the property as abandoned" did not qualify as newly discovered evidence as defined in C.P.L. § 440.10(1)(g).  (*Id.*).  In particular, the trial court found that Zaccaria testified about the history of break-ins at 73 Theodore at trial and that this testimony "was not persuasive to the trier of fact as to whether the building . . . was a dwelling."  (*Id.*).  The trial court determined that Petitioner failed to show either that the content of the 911 call was discovered after trial or that "the sole, subjective opinion of an anonymous 911 caller would probably change the result at a new trial."  (*Id.*).

Petitioner filed a *pro se* application for leave to appeal to the Appellate Division. (Petitioner's Application for Leave to Appeal Denial of Second 440 Motion, Resp't Ex. G).  The prosecution opposed the application.  (Prosecution's Affidavit Opposing Leave to Appeal Denial of Second 440 Motion, Resp't Ex. G).  By order dated February 22, 2021, the Appellate Division denied leave to appeal.  (Order Denying Leave to Appeal Denial of Second 440 Motion, Resp't Ex. G).

**B.**      **Federal Habeas Proceeding**

The petition filed consists of a form § 2254 habeas petition (Dkt. 1 at 1-9); an affidavit of service and civil cover sheet (*id.* at 10, 124); copies of various pleadings, briefs, exhibits, and orders filed in the state court proceedings (*id.* at 11-26, 49-123); and Petitioner's affidavit in support of his habeas petition (*id.* at 27-48).  Petitioner asserts the following grounds for habeas relief:  (1) pre-trial counsel was ineffective because he "never mention[ed] anything about [Petitioner] getting 16 to life if [he] went to trial and lost," leaving Petitioner "under the assumption [he] would be considered a second violent felony offender" and causing him to reject the pre-indictment plea offer (*id.* at 6, 38-41); (2) trial counsel "failed to investigate any leads or pertinent information" and presented a defense that consisted of "a lie that was contrary to the facts" (*id.* at 7, 41-48); (3) the trial court erroneously refused to charge second-degree criminal trespass as a lesser included offense (*id.* at 7, 29-32); (4) the prosecutor violated *Brady* by failing to disclose police reports concerning prior break-ins at 73 Theodore (*id.* at 7, 32-36); and (5) the prosecutor committed misconduct on summation (*id.* at 36-38).

Respondent filed an answer (Dkt. 5) and memorandum of law in opposition to the petition (Dkt. 6).  Petitioner filed a reply.  (Dkt. 10).

## III.  <u>STANDARD OF REVIEW</u>

Petitioner's conviction post-dates the enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, which "significantly curtailed the power of federal courts to grant the habeas petitions of state prisoners."  *Lainfiesta v. Artuz*, 253 F.3d 151, 155 (2d Cir. 2001) (citing *Williams v. Taylor*,

529 U.S. 362, 399 (2000)).  As amended by AEDPA, 28 U.S.C. § 2254(d) "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

Under 28 U.S.C. § 2254(d), a federal court "shall not . . . grant[ ]" an application for a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d).  In addition, a state court's factual findings are entitled to a presumption of correctness which only may be rebutted by "clear and convincing evidence." *Id.* § 2254(e)(1).

Even where a habeas petitioner "surmount[s] 2254(d)'s bar to habeas relief," *Wiggins v. Smith*, 539 U.S. 510, 542 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 393-94, 397 (2000)), the federal court must review the claim de novo under the correct federal standard, *see id*.  In other words, AEDPA "sets forth a precondition to the grant of habeas relief . . . not an entitlement to it." *Fry v. Pliler*, 551 U.S. 112, 119 (2007).  Thus, in addition to satisfying the limitations in § 2254(d), "the petitioner still 'bears the ultimate burden of proving by a preponderance of the evidence that his constitutional rights have been violated.'" *Cardoza v. Rock*, 731 F.3d 169, 178 (2d Cir. 2013) (quoting *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012)).

IV.     **DISCUSSION**

A.      **Ineffective Assistance of Pre-Trial Counsel**

Petitioner argues that pre-trial counsel was ineffective during plea negotiations because he failed to recognize that Petitioner was a persistent violent felony offender rather than a second violent felony offender.  Respondent counters that Petitioner would have been designated as a persistent violent felony offender regardless of whether he was convicted after trial of second-degree burglary, a class C violent felony; or whether he pleaded guilty to attempted second-degree burglary, a class D violent felony.  (Dkt. 6 at 18).  Respondent contends that Petitioner accordingly cannot establish how he was prejudiced by pre-trial counsel's incorrect assessment of his recidivist status and sentencing exposure.  (*Id.* at 17).

1.      **Legal Principles**

While defendants have "no constitutional right to plea bargain," *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977), they do enjoy a constitutional right to the effective assistance of counsel during plea negotiations, *Missouri v. Frye*, 566 U.S. 134, 140 (2012). The Supreme Court has "established that claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*[*v. Washington*, 466 U.S. 668 (1984)]."  *Id.* (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)).

Under *Strickland*, the defendant "[f]irst . . . must show that counsel's performance was deficient," which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687.  During plea negotiations, an attorney has "a professional obligation to

adequately inform [his] client about the considerations that are relevant to [his] client's decision to accept or deny a plea bargain." *Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005). For instance, "counsel must communicate to the defendant the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Purdy v. United States*, 208 F.3d 41, 44 (2d Cir. 2000) (internal citation omitted).

"Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. When the ineffective advice allegedly led to the rejection, rather than an acceptance, of a plea offer, "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Frye*, 566 U.S. at 147. "In order to complete a showing of *Strickland* prejudice, defendants who have shown a reasonable probability they would have accepted the earlier plea offer must also show that, if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented." *Id.* at 148; *accord Lafler v. Cooper*, 556 U.S. 156, 164 (2012). "This further showing is of particular importance because a defendant has no right to be offered a plea." *Id.*

### 2. Application

#### a. Deficient Performance

Pre-trial counsel's letter conveying the February 24, 2014 plea offer contains several errors. The first errors occurred in connection with pre-trial counsel's characterization of

the charged offense and the reduced offense.  According to pre-trial counsel, the crime with which Petitioner was charged (second-degree burglary in violation of P.L. § 140.25(2)) was a class B violent felony, while the reduced charge (attempted second-degree burglary in violation of P.L. §§ 110.00/140.25(2)) was a class C violent felony offense.  (Auricchio Letter at 1, Ex. A to First 440 Motion, Resp't Ex. D).  Pre-trial counsel was incorrect on both counts.  Second-degree burglary under P.L. § 140.25(2) is a class C violent felony offense, *see id.* § 70.02(1)(b); while attempted second-degree burglary is a class D violent felony offense, *see id.* § 70.02(1)(c) (defining class D violent felony offenses as including attempts to commit any of the class C felonies in P.L. § 70.02(1)(b)).

The next set of errors occurred during pre-trial counsel's analysis of Petitioner's criminal history.  There are six criteria for determining whether a prior conviction is a predicate violent felony conviction.  *See* N.Y. Penal Law § 70.04(b)(1)(i)-(vi).  As relevant to Petitioner's case, the conviction "must have been in [New York] [S]tate . . . of a violent felony offense as defined in subdivision one of [P.L.] section 70.02."  *Id.* § 70.04(b)(1)(i). In addition, the sentence on that conviction "must have been imposed not more than ten years before commission of the felony of which the defendant presently stands convicted." *Id.* § 70.04(b)(1)(iv).  But in calculating the ten-year window, periods of incarceration toll the running of the ten years specified in P.L. § 70.04(b)(1)(iv).  *See* N.Y. Penal Law § 70.04(b)(1)(v) ("[A]ny period of time during which the person was incarcerated for any reason between the time of commission of the previous felony and the time of commission of the present felony shall be excluded. . . .").

With regard to Petitioner's offender classification, pre-trial counsel stated that he had considered three prior convictions: (1) a March 21, 2003 conviction for first-degree robbery (P.L. § 160.15(3)), a class B violent felony offense, *see* P.L. § 70.02(1)(a), which pre-trial counsel incorrectly characterized as a "CVFO" (presumably, a class C violent felony offense); (2) a September 8, 1999 conviction for fourth-degree grand larceny (P.L. § 155.30), a class E non-violent felony, *see id.*, which pre-trial counsel incorrectly described as a "DF" (presumably, a class D non-violent felony); and (3) an October 22, 1992 conviction for attempted second-degree burglary (P.L. §§ 110.00, 140.25), a class D violent felony, *see id.* § 70.02(1)(c), which pre-trial counsel incorrectly described as a "DF" (presumably, a class D non-violent felony).  (Auricchio Letter at 2, Ex. A to First 440 Motion, Resp't Ex. D).

Pre-trial counsel stated that "based upon [his] review [of Petitioner's criminal history], if convicted in this case," the trial court "will be required" to sentence him as a "[s]econd [v]iolent [f]elony [o]ffender, convicted of a second violent felony offense."  (*Id.* at 2).  This conclusion was based on pre-trial counsel's finding that Petitioner "ha[d] *a* previous conviction for *a* [v]iolent [f]elony [o]ffense, which occurred within the last ten years, excluding any periods of incarceration."  (*Id.* (emphases supplied)).

Comparing the offenses included in pre-trial counsel's list of prior convictions (*see* Auricchio Letter at 2, Ex. A, First 440 Motion, Resp't Ex. D), with the provisions of P.L. § 70.02, pre-trial counsel should have realized that Petitioner had *two* prior convictions for violent felony offenses—one in 2003 for first-degree robbery and one in 1992 for attempted second-degree burglary.  Indeed, when articulating the plea offer's terms on the first page

of the letter, pre-trial counsel *did* recognize that attempted second-degree burglary under P.L. §§ 110.00/140.25(2) was a violent felony offense. (Auricchio Letter at 1, Ex. A to First 440 Motion, Resp't Ex. D). There is no explanation in the record as to why he did not do so on the second page of the letter (*see id.* at 2) when he listed Petitioner's prior convictions.

In any event, it was clear from a review of Petitioner's history of felony convictions that he had two convictions for crimes that were violent felony offenses as defined in P.L. § 70.02(1). In addition, Petitioner was about to be convicted of another violent felony offense, whether he pleaded guilty to attempted second-degree burglary or was convicted after trial of second-degree burglary. Petitioner thus appeared to meet the statutory definition of a persistent violent felony offender under P.L. § 70.08, making it incumbent on pre-trial counsel to obtain Petitioner's prison and jail records to determine whether the periods of incarceration provided sufficient tolling to bring the 1992 conviction within the ten-year window. *See* N.Y. Penal Law § 70.04(b)(iv), (v). Pre-trial counsel apparently did not do so.

Respondent does not concede that pre-trial counsel performed deficiently. Instead, Respondent tries to explain away pre-trial counsel's error by noting that when the plea was offered, "all parties believed" that Petitioner would be deemed a second violent felony offender, and that the "determination of an offender's sentencing status is not necessarily immediately apparent." (Dkt. 6 at 19). Respondent's argument is unpersuasive. There can be no serious dispute that pre-trial counsel performed deficiently in failing to ascertain Petitioner's correct recidivist status and actual sentencing exposure. *See*, *e.g.*, *United*

*States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998) (finding that defense counsel's "assistance 'fell below the prevailing professional norms' for advising a client during plea negotiations of his maximum exposure to imprisonment at sentencing" where counsel "grossly underestimat[ed]" his client's sentencing exposure at 120 months conviction, when actual sentencing range was 262 to 327 months).

Of course, deficient performance is not enough to satisfy *Strickland*'s deferential standard. *See Strickland*, 466 U.S. at 697. Accordingly, the Court turns to whether pre-trial counsel's deficient performance resulted in prejudice.

### b.    Prejudice

Petitioner tries to show prejudice by asserting that if pre-trial counsel had correctly informed him that he was a persistent violent felony offender, he would have accepted the prosecution's offer to plead guilty as a second-felony offender to attempted second-degree burglary and receive a second violent felony offender sentence of five to seven years determinate in prison. But this argument relies on an untenable premise—that as long as the prosecutor and trial court were ignorant about Petitioner's true criminal history, he still was a second violent felony offender and legally could have been sentenced as such. Petitioner tacitly admits that if he knew he was a persistent violent felony offender, he would have deliberately concealed that fact from the trial court and the prosecutor and would have accepted a plea offer with a sentence he knew was unlawful for a persistent violent felony offender such as himself. In addition, Petitioner would have expected pre-trial counsel to go along with his deception.

However, if pre-trial counsel had analyzed Petitioner's prior criminal history correctly and learned that Petitioner was not a second violent felony offender, pre-trial counsel was ethically bound to inform Petitioner, the prosecutor, and the trial court that the February 24, 2014 plea offer was unlawful and could not be consummated. *See*, *e.g.*, *Aeid v. Bennett*, 296 F.3d 58, 61-63 (2d Cir. 2002).

*Aeid* involved a nearly identical factual scenario to the one in this case. There, the petitioner had been offered a plea deal involving a 5-to-15-year-sentence of imprisonment. *Id.* at 61. Against his attorney's advice, the petitioner rejected the plea. *Id.* Neither defense counsel nor the prosecutor realized that under a then-new state statute, the lower limit of an indeterminate sentence must be one-half of the sentence's upper limit, rather than one-third. *Id.* at 61, 63. Had defense counsel been aware of that information, he also would have known that the maximum sentence for his client's offense was 12 and one-half to 25 years, not eight and one-third to 25 years. *Id.* at 63. However, if the defense attorney had been aware of this fact and had so informed his client, they both would have known that the proffered 5-to-15-year sentence was illegal, because the lower limit of that plea offer was not one-half of the maximum sentence. The Second Circuit explained that "if counsel had *this* knowledge—the knowledge of the correct law—he could not ethically have advanced a plea agreement requiring the imposition of a 5-to-15-year sentence." *Id.* (emphasis in original); *see also*, *e.g.*, *McCoy v. Ct. of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 436 (1988) ("Neither paid nor appointed counsel may deliberately mislead the court with respect to either the facts or the law, or consume the time and the energies of the court or the opposing party by advancing frivolous arguments.").

As the Second Circuit noted, "[t]he prejudice inquiry 'focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.'" *Aeid*, 296 F.3d at 63 (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* (quoting *Lockhart*, 506 U.S. at 372). "Where Aeid was not entitled to an illegal sentence of 5 to 15 years, his counsel's deficient performance did not deprive him of a benefit to which the law entitled him." *Id.* That reasoning applies equally here. Petitioner was not entitled to an unlawful sentence of five to seven years as a second violent felony offender, and therefore pre-trial counsel's incorrect assessment of his recidivist status did not deprive him of a benefit to which he was legally entitled.

The appropriate formulation of prejudice in this type of situation asks whether there is a reasonable probability that if the parties were aware of a defendant's correct recidivist status, the prosecutor would have offered a plea with a legal sentence that would have been more favorable than the sentence imposed after trial, and the defendant would have accepted such an offer. *See* 296 F.3d at 63-64 ("agree[ing] with the prosecution that, in order to show prejudice under *Strickland*, Aeid is required to prove that, 'but for his attorney's mistaken advice, Aeid and the prosecutor would have agreed on the imposition of a legal sentence [that would have been] more favorable than the 12-to-24-year sentence ultimately imposed on Aeid after trial'" (second alteration in original (citation to record omitted)).

- 28 -

Although such a plea offer was not officially extended here, the record shows that there was an opportunity for Petitioner to plead guilty to a class D violent felony with the condition that he admit his status as a persistent violent felony offender.  As noted above, at the September 17, 2014 appearance, the prosecutor stated that the parties had been discussing alternatives to trial; the only possible disposition would involve a plea to a class D violent felony with Petitioner admitting his status as a persistent violent felony offender. (9/17/14 Tr. at 9).  The prosecutor agreed to leave that possibility open until October 15, 2014.  (*Id.* at 10-11).  The trial court stated that if Petitioner ultimately went that route, it "would be inclined to sentence [Petitioner] to the minimum."  (*Id.* at 11).  The minimum persistent violent felony offender sentence for a class D violent felony was 12 year to life.

Petitioner did not avail himself of the opportunity to plead guilty as a persistent violent felony offender and instead proceeded to trial.  After being convicted a class C violent felony, he received the statutory minimum of 16 years to life.  Thus, there was a four-year difference between the minimum end of the sentence he could have received under a legal plea offer and the minimum end of the sentence he actually received.  The maximum end of the sentence—life in prison—was the same.

Petitioner has never stated or implied that he would have accepted any sentence other than the illegal second violent felony offender sentence of five to seven years in prison.  Moreover, he has never stated or implied that he would have accepted a sentence that involved a maximum of life imprisonment, a mandatory aspect of a persistent violent felony offender sentence.  The Supreme Court has "held that the defendant . . . failed adequately to allege prejudice where he had failed to 'allege in his habeas petition that, had

counsel correctly informed him about his parole eligibility date, he would have not pleaded guilty and [would have] insisted on going to trial.'" *Aeid*, 296 F.3d at 64 (alteration in original (quoting *Hill*, 474 U.S. at 60)).  In light of *Hill*, Petitioner's "failure to allege that correct advice from [pre-trial] counsel would have altered . . . [his] decision" is "a critical omission."  *Aeid*, 296 F.3d at 64.  "In light of this failure," the Court "cannot say that the state court[']s[] decision[] [was] an objectively unreasonable application of the teachings of the Supreme Court."  *Id.* (citing *Strickland*, 466 U.S. at 687-88).  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### B.    Ineffective Assistance of Trial Counsel

Petitioner asserts that trial counsel was ineffective because: (1) he did not retain an investigator to find and speak with Griffin, the neighbor who lived at 69 Theodore; (2) did not investigate prior break-ins at 73 Theodore; (3) did not argue against the prosecutor's motion *in limine* to preclude the 911 call as hearsay; (4) did not object to the admission of photographic evidence based on allegedly inconsistent time-stamps; and (5) failed to present a mistake of fact defense and misled the jury during his opening statement and summation.   Respondent has raised procedural defenses to certain of Petitioner's ineffectiveness claims.  (*See* Dkt. 6 at 22-23).  Because Petitioner's claims are easily rejected as meritless, judicial efficiency favors bypassing the threshold procedural issues and proceeding directly to the merits.  *See Miller v. Fennessey*, No. 1:20-CV-00354 EAW, 2024 WL 2214808, at *20 (W.D.N.Y. May 16, 2024).  In addition, the Court need not determine whether the state courts adjudicated Petitioner's claims on the merits for purposes of 28 U.S.C. § 2254(d) because even under the less deferential, pre-AEDPA

standard of review, they do not warrant habeas relief.  *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("Courts can . . . deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review, *see* § 2254(a).").

### 1.    Legal Principles

As noted above, to fulfill *Strickland*'s two-part test, a defendant first must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  466 U.S. at 687.  Because there are "countless ways to provide effective assistance in any given case," *id.* at 689, the petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

"Second, the defendant must show that the deficient performance prejudiced the defense."  *Id.* at 687.  This "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.*  "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."  *Id.* at 693.

### 2.    Application

#### a.    Failure to Investigate Griffin

"The duty to investigate is essential to the adversarial testing process '[b]ecause th[e] testing process generally will not function properly unless defense counsel has done

some investigation into the prosecution's case and into various defense strategies.'" *Greiner v. Wells*, 417 F.3d 305, 320-21 (2d Cir. 2005) (alterations in original (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986))).  Petitioner contends that speaking to Griffin was essential to the defense strategy of proving that 73 Theodore was abandoned and therefore not a "dwelling" for purposes of the second-degree burglary charge under P.L. § 140.25(2).  As noted above, Petitioner submitted an affidavit from Griffin in support of his 330 motion in which she stated that Zaccaria "would come by periodically to pick up his mail but was no longer sleeping there at night."  (Griffin Aff. ¶¶ 2, 3, 5, 330 Motion, Resp't Ex. A).  Assuming that Griffin would have provided testimony consistent with her affidavit, it would not have negated a finding that 73 Theodore was a dwelling.

A conviction for second-degree burglary under P.L. § 140.25(2) "require[s] proof that the residence was a dwelling . . . , defined as 'a building which is *usually occupied* by a person lodging therein at night.'"  *People v. Sheirod*, 124 A.D.2d 14, 16 (4th Dep't 1987) (emphasis supplied (quoting N.Y. Penal Law, § 140.00(3))).  "[P]roof of actual presence by a human being . . . is not required, and the 'usually occupied' element may be satisfied even though the residence is temporarily unoccupied at the time of the burglary."  *Id.* at 17; *accord, e.g.*, *People v. Melendez*, 148 A.D.2d 964, 965 (4th Dep't 1989) ("A dwelling does not lose its character as such merely because its occupant is temporarily absent.").

"[T]he following factors are relevant in considering whether absence is merely temporary: (1) the nature of the structure, i.e., its adaptation at the time of the burglary to occupancy by a person; (2) the intent of the owner to return; and (3) whether, on the date of the burglary, a person could have occupied the structure overnight."  (*Id.* (internal

citations omitted)); *see also People v. Barney,* 294 A.D.2d 811, 812 (4th Dep't 2002) ("In cases where an occupant is temporarily absent, a dwelling retains its character as such if the building was adapted for occupancy at the time of the wrongful entry, the occupant intended to return, and, on the date of the entry, a person could have occupied the building overnight."), *aff'd,* 99 N.Y.2d 367 (2003).

Zaccaria, the owner of 73 Theodore, testified that he was current on all his utility payments and local taxes; that the utilities had been on continuously without any lapses since he and his ex-wife bought the house in the 1990s; that he owned no other properties; that he got his mail at that address; and that he alternated between sleeping there and at his girlfriend's house in Clarence. (T: 217-22). The photographs of the interior of the house (People's Exhibits 4-8, Resp't Ex. H) show that it was fully furnished (e.g., there was a bed, dresser, nightstand, and floor fan in the bedroom; and there was a stove, refrigerator, and dining table and chairs in the kitchen). The house clearly was adapted for occupancy and a person could have occupied it overnight on the date of the unlawful entry. Furthermore, Zaccaria intended to, and did, return to 73 Theodore. Although he regularly spent nights at his girlfriend's house, he said he continued to sleep at 73 Theodore and to pick up his mail there.

In light of this evidence, there is no reasonable probability that testimony from Griffin—assuming she would have agreed to testify—would have altered the jury's conclusion, implicit in its guilty verdict, that the prosecution proved beyond a reasonable doubt that 73 Theodore was a dwelling. Thus, there is no reasonable probability that the jury would have acquitted Petitioner of second-degree burglary under P.L. § 140.25(2).

Accordingly, trial counsel's failure to investigate Griffin and secure her testimony did not prejudice the defense.

### b.     Failure to Investigate Prior Break-Ins

Petitioner faults trial counsel for failing to investigate the history of prior break-ins at 73 Theodore and discover the two police reports concerning break-ins that occurred in June 2013.  However, Petitioner cannot show that he was prejudiced by trial counsel's failure to obtain those reports because the fact of the prior break-ins was elicited during trial counsel's cross-examination of Zaccaria, who explained that both before and after January 9, 2014, there had "been a number of incidents" of people breaking into the house and the "original" break-in "took place maybe mid[-]2013" resulting in a basement window being broken.  (T: 235, 240).  Zaccaria testified that to try to keep intruders out, he had boarded up some of the windows on the first floor and basement level of the house.  (T: 237-39).

Based on Zaccaria's testimony, the jury was well aware of the history of break-ins. Nonetheless, the jury found that the prosecution proved beyond a reasonable doubt that 73 Theodore was a dwelling, and that at the time of entry, Petitioner intended to commit a crime therein.  Even if trial counsel had obtained the police reports concerning the break-ins, there is no reasonable probability that the jury would have returned a different verdict.

### c.     Failure to Oppose the Preclusion of the 911 Call

The prosecutor made a motion *in limine* on November 12, 2014, seeking to preclude the 911 call regarding the incident at 73 Theodore.  (*See* Prosecutor's Motion, Resp't Ex. A; *see also* Transcript of 911 Call and Copy of Prosecutor's Motion, Exhibits to Second

440 Motion, Resp't Ex. F).   The caller, a woman who stated she wished to remain anonymous, reported that several black males were going in and out of the house, and that there was a car parked in the driveway.   (Transcript of 911 Call, Resp't Ex. F).   The caller described 73 Theodore as "an abandoned house," stating that "[a] guy lived there but he's not there.   The door is open and everything."   (*Id.*).   The operator asked, "So it's an abandoned house?"   (*Id.*).   The caller replied, "It's a guy, his furniture and stuff is still in there, but someone broke into his house so he ain't been there in a few weeks."   (*Id.*).   The operator then asked, "So it's a burglary?   Someone lives there, correct?   Is it him?   (*Id.*).   The caller said, "Yes."   (*Id.*).   The caller went on to provide a description of the men and the license plate and color of the car parked out front.   (*Id.*).   The operator indicated that they would send officers out to the location.   (*Id.*).

The prosecutor stated that his repeated efforts to identify the caller had been unsuccessful.   (Prosecutor's Motion *In Limine* at 2, Resp't Ex. A).   He argued that the 911 call was hearsay and not subject to any exceptions, and therefore he was not intending to seek to introduce it at trial.   (*Id.*).   The prosecutor also requested that the defense be precluded from mentioning the 911 call during trial.   (*Id.* at 3).

On November 14, 2014, the prosecutor argued the motion *in limine*.   (11/14/14 Tr. at 2).   Trial counsel agreed that "generally out-of-court statements offered for the truth of the matter asserted in the statement is hearsay and would be admissible," and that the prosecution "should be precluded from offering any of the purported observations or opinions made by some anonymous person unless that person ends up testifying in court."

(*Id.* at 3).  The trial court stated that "obviously then both sides will be precluded from entering in the 911 call or evidence of the 911 call of this anonymous caller."  (*Id.*).

Apart from the 911 caller's initial description of 73 Theodore as "abandoned," the rest of her observations about Zaccaria and the house were not helpful to the defense.  In particular, she agreed with the 911 operator that someone was living at 73 Theodore and that she was witnessing a burglary in progress.  (Transcript of 911 Call, Resp't Ex. F).  Thus, trial counsel made a reasonable strategic decision not to oppose the prosecutor's motion *in limine*.  And since the contents of the 911 call, on balance, did not assist the defense, Petitioner cannot show that he was prejudiced by trial counsel's decision.

### d.  Failure to Object to Admission of Photographs

Petitioner contends that trial counsel should have objected to the prosecutor's admission of photographs of 73 Theodore because they bore "(3) different time stamps." (Second 440 Motion at 6, 12 (citing Exhibit titled "Photographs"), Resp't Ex. F).  The photographs submitted by Petitioner in support of the Second 440 Motion are black and white copies of People's Exhibits 4 through 8, submitted by Respondent as part of Respondent's Exhibit H.

"Failure to make a meritless argument does not amount to ineffective assistance." *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999).  As these photographs bear no time stamps, trial counsel did not have a meritorious objection to make based on alleged discrepancies in time-stamps.  "Counsel cannot now be deemed ineffective for failing to make an argument or objection that stood little chance of success."  *Cochran v. Griffin*,

No. 918CV0175LEKTWD, 2021 WL 1223848, at *9 (N.D.N.Y. Mar. 31, 2021) (citing *Arena*, 180 F.3d at 396).

> **e.      Failure to Present Mistake of Fact Defense and Misleading the Jury**

Petitioner criticizes trial counsel for commenting, during his opening statement, that the defense expected the proof to be that Petitioner went inside 73 Theodore Street to get out of the cold and smoke marijuana. (*See* T: 184). Petitioner contends it was irrational to mention this defense because it contradicted what he describes as the record evidence—that he entered 73 Theodore, which he believed was abandoned, to scrap for copper. To the extent that Petitioner refers to his subjective belief that 73 Theodore was abandoned, the only documentation of that was his statement to police upon his arrest. (*See* Exhibit titled "Arresting Statement," Second 440 Motion, Resp't Ex. F). After being read his rights and placed in a BPD patrol vehicle, a BDP officer asked, "Why were you in the house?" (*Id.*). Petitioner responded, "I didn't see any footprints in the snow so I figured it was a vacant house. Once I went inside and saw all the stuff I got scared and thought about leaving, but I didn't. I was only looking for scrap." (*Id.*). However, Petitioner did not testify at trial, and Petitioner's post-arrest statement was not introduced. And during the portion of the jail phone call played for the jury, Petitioner did not mention that he believed 73 Theodore was abandoned.

Moreover, Petitioner's entry into what he subjectively believed was an abandoned building to scrap for copper was not, in and of itself, a defense to the second-degree burglary charge. *Cf. People v. Arce*, 70 A.D.3d 1196, 1198-99 (3d Dep't 2010) (finding

that defendant's conviction for burglary of a dwelling was not against weight of the evidence; although defendant testified he routinely collected used bottles and cans to be redeemed for deposits and believed residence was abandoned and unoccupied, and only formed intent to steal personal property after entering and discovering residence was not abandoned, he acknowledged he never approached the door or sought to inquire of building's occupants if they had any empty bottles or cans, but instead crawled through side window without first trying to determine whether building was occupied and admitted that, as he looked through the window, he saw furniture in the room).

Given the strength of the prosecution's case, trial counsel "quite understandably sought to present alternate theories of the case that could potentially exonerate his client." *Kirby v. Senkowski*, 141 F. Supp. 2d 383, 403 (S.D.N.Y. 2001) (holding that petitioner's allegations that "trial counsel presented implausible alternative theories of the crime" "lack[ed] merit, for . . . these are matters of defense counsel's trial strategy"), *aff'd*, 61 F. App'x 765 (2d Cir. 2003); *see also Lopez v. Greiner*, 323 F. Supp. 2d 456, 480 (S.D.N.Y. 2004) (finding that petitioner's allegations "that trial counsel made promises in his opening statement that he failed to keep—in particular, that he did not produce certain witnesses or pursue certain allegedly promising defenses" did "not withstand scrutiny under the first prong of *Strickland*"), *aff'd*, 159 F. App'x 320 (2d Cir. 2005).  Based on the testimony and evidence that was introduced, it was not unreasonable for trial counsel to focus on arguing that 73 Theodore was not a dwelling and that the prosecution had not proved Petitioner's intent to commit a crime inside the building.  Although ultimately unsuccessful, trial counsel presented his chosen strategy coherently and vigorously to the jury.  Petitioner has

not established that trial counsel's representation fell below an objective standard of reasonableness, or that his representation prejudiced the defense.

In summary, none of the actions and omissions challenged by Petitioner were objectively unreasonable in light of prevailing professional norms. Furthermore, there is no reasonable probability of a different result had trial counsel performed in the manner that Petitioner would have preferred. Therefore, Petitioner is not entitled to habeas relief on this claim.

### C.    Trial Court's Denial of the Lesser Included Offense Charge

Petitioner asserts that the trial court erroneously denied his request to charge the jury with second-degree criminal trespass (P.L. § 140.15(1)) as a lesser included offense of second-degree burglary. Respondent argues that the claim is not cognizable and is, in any event, meritless because there is no reasonable view of the evidence by which the jury could have found that Petitioner entered 73 Theodore Street without the intent to commit a crime. (Dkt. 6 at 7-9).

### 1.    Legal Principles

In *Beck v. Alabama*, 447 U.S. 625 (1980), the Supreme Court held that a death sentence is unconstitutional "when the jury was not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict." *Id.* at 627. The Supreme Court acknowledged that it has "never held that a defendant is entitled to a lesser included offense instruction as a matter of due process," *id.* at 637, but reasoned that in capital cases, the "procedural safeguard" of "giv[ing] the jury the 'third option' of convicting on a lesser included offense," *id.*, was required to mitigate

"the risk of an unwarranted conviction." *Id.* The Supreme Court expressly declined to consider whether such a requirement would also apply in the noncapital context. *See id.* at 638 n.14 ("We need not and do not decide whether the Due Process Clause would require the giving of such instructions in a noncapital case.").

Since *Beck*, the Supreme Court has not ruled on the constitutionality, in a noncapital case, of denying a request for a jury charge on lesser included offenses. *See, e.g.*, *Gilmore v. Taylor*, 508 U.S. 333, 361 (1993) (Blackmun, J., dissenting) ("We left open the question whether *Beck* applies in the noncapital context."). The Second Circuit likewise has not answered this question. *See Jones v. Hoffman*, 86 F.3d 46, 48 (2d Cir. 1996) (collecting cases).

In *Jones*, a pre-AEDPA noncapital § 2254 case, the Second Circuit concluded that granting relief on the petitioner's due process claim based on the denial of a lesser included offense charge would amount to the announcement of a new rule of constitutional interpretation. *Id.* at 48. The Second Circuit determined that the non-retroactivity doctrine articulated in *Teague v. Lane*, 489 U.S. 288 (1989), "precluded [their] consideration of the issue." *Id.* (citing *Turner v. Marshall*, 63 F.3d 807, 819 (9th Cir. 1995) ("With the intercircuit split on whether the lack of a lesser included offense instruction in a noncapital case presents constitutional error, any finding of constitutional error would create a new rule, inapplicable to the present [habeas] case under *Teague*.")).

### 2.   Application

In the wake of AEDPA, "the so-called 'new rule' rule of *Teague* has been superseded by [28 U.S.C. § ]2254(d)(1)." *Rincon v. Burge*, No. 05 CIV. 0686 LTS MHD,

2010 WL 6789121, at *30 (S.D.N.Y. Sept. 8, 2010) (citing *Williams v. Taylor*, 529 U.S. 362, 379 (2000) ("The antiretroactivity rule recognized in *Teague*, which prohibits reliance on 'new rules,' is the functional equivalent of a statutory provision commanding exclusive reliance on 'clearly established law.")), *adopted*, No. 05 CIV. 686 LTS MHD, 2011 WL 2436799 (S.D.N.Y. June 16, 2011).  Thus, regardless of whether the claim is viewed *de novo* or through the lens of 28 U.S.C. § 2254(d), the outcome is the same—habeas relief is precluded.  *See Rasmussen v. Kupec*, 54 F. App'x 518 (2d Cir. 2003) (post-AEDPA § 2254 case; relying on *Jones* and "recogniz[ing] the preclusive force of *Teague*" as to petitioner's claim that due process required the state court to charge the jury on the lesser included offenses of first- and second-degree manslaughter).  Accordingly, the claim based on the denial of a jury charge on a lesser included offense is dismissed without reaching the merits.

### D. Prosecutorial Misconduct

Petitioner asserts that the prosecutor violated his due process rights to a fair trial by commenting on the absence of evidence supporting certain assertions made his trial counsel during the opening statement.  According to Petitioner, the prosecutor's remarks shifted the burden of proof and could have been interpreted as a comment on his failure to testify.

During his opening statement, trial counsel said, "we think . . . the proof will be" that on the morning of January 9, 2014, Petitioner had been with his girlfriend, who lived a block away from 73 Theodore.  (T: 184).  Petitioner and his girlfriend argued, and she asked him to leave.  (*Id.*).  Petitioner then "left on foot on that very cold winter morning. . . , and while he was walking he ran into a guy that he knew and they decided to go get high."  (*Id.*).  This person "took [Petitioner] over to the house on Theodore to go smoke

some weed," and they "[e]ntered the property at 73 Theodore through the side door, which was open." (*Id.*). A "basement window was broken," snow was "piled up on the front porch," there were no footprints or tire tracks in the snow, and the house "apparently had been abandoned." (T: 184-85).

Petitioner did not testify at trial; nor did trial counsel call Petitioner's girlfriend or the person who allegedly brought Petitioner over to 73 Theodore to get high. Alberti testified that he did not find any marijuana when he searched Petitioner. (T: 213).

Trial counsel did not reference this version of events when he made his closing argument. During his summation, the prosecutor commented on the absence of evidence supporting the scenario laid out by trial counsel in his opening statement:

> [T]he defendant has no burden whatsoever, we have the burden. But you know what he didn't say in that jail call? He didn't say I got caught in the house because I was trying to get out of the cold, or I was in there because I was trying to get high. You remember that's what [trial counsel] told you in his opening. He didn't say that today. In his opening there was some story about this defendant getting into a fight with his girlfriend and he was walking through the park in the cold and he met up with someone and somehow ended up in 73 Theodore. Remember that? He didn't have intent to steal, no, he was just trying to get high. Now, this defendant has no burden whatsoever. However, the evidence in this case comes from the witness stand right there. And there was absolutely zero, no evidence whatsoever that any of that happened.

(T: 305-06).

Trial counsel objected on the basis that the prosecutor was suggesting that Petitioner "had an obligation to put on a case and disprove an element of the crime." (T: 306). The prosecutor responded that he was "very clear that the defense has no burden whatsoever." (*Id.*). The trial court overruled the objection. (*Id.*). As noted above, the Appellate Division

rejected Petitioner's prosecutorial misconduct on direct appeal, and its ruling constitutes an adjudication on the merits for purposes of 28 U.S.C. § 2254(d).

### 1.     Legal Principles

The relevant standard on habeas review for evaluating prosecutorial misconduct claims is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 180 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).  Improper conduct by the prosecutor warrants habeas relief "only if [it] '"so infected the trial with unfairness as to make the resulting conviction a denial of due process."'"  *Jackson v. Conway*, 763 F.3d 115, 146 (2d Cir. 2014) (quoting *Darden*, 477 U.S. at 180 (quoting *Donnelly*, 416 U.S. at 643)).  The Supreme Court has described its standard for evaluating prosecutorial misconduct claims as "a very general one," which "leav[es] courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (ellipsis in original (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004))).

When applying this generalized standard, "the remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error." *United States v. Young*, 470 U.S. 1, 12 (1985).  "In other words, the Court must consider the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly." *Id.*  Over the years, the Supreme Court has discussed several factors to consider in making this assessment, including the strength of the prosecution's proof against the defendant, *see Darden*, 477 U.S. at 183 (stating that the "'overwhelming eyewitness and circumstantial evidence to support a finding of guilt on all

charges,' reduced the likelihood that the jury's decision was influenced by argument" (quotation to lower court opinion omitted)); the nature and frequency of the improper remarks, *see Berger v. United States*, 295 U.S. 78, 89 (1935) ("[W]e have not here a case where the misconduct of the prosecuting attorney was slight or confined to a single instance, but one where such misconduct was pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential.")); whether the remarks were "invited" by defense counsel's "opening salvo," *Young*, 470 U.S. at 12, and did no more than necessary to "right the scales," *id.* at 14; and the trial court's jury instructions and any curative measures it took, *see Donnelly*, 416 U.S. at 644).

### 2.    Application

#### a.    The "Invited Response" and "Fair Comment" Rationales Do Not Apply

As noted above, the Appellate Division rejected the prosecutorial misconduct claim because the comments were responsive to trial counsel's *opening* statement and were fair comment on the evidence. *McCullough*, 171 A.D.3d at 1497-98. The "invited response" principle, as articulated by New York State and federal courts, focuses on the content of the defense *summation*, not the opening statement. *See*, *e.g.*, *People v. Halm*, 81 N.Y.2d 819, 821 (1993) ("[T]he prosecutor's closing statement must be evaluated in light of the defense summation, which put into issue the complainants' character and credibility and justified the People's response."); *United States v. Tocco*, 135 F.3d 116, 130 (2d Cir. 1998) ("Under the invited or fair response doctrine, the defense summation may open the door to

an otherwise inadmissible prosecution rebuttal." (citing *United States v. Robinson*, 485 U.S. 25, 32 (1988)).

Although trial counsel suggested in his opening statement that the jury would hear evidence explaining Petitioner's presence inside 73 Theodore, trial counsel did not allude to this factual theory during his summation. Instead, he argued that 73 Theodore was an abandoned building and that the prosecutor failed to prove it met the definition of "dwelling" for purposes of the burglary statute. Trial counsel also contended that the prosecutor failed to prove Petitioner's intent to commit a crime inside the building, given the absence of any burglar tools, the fact that no items of significant value had been taken, and the fact that the incident occurred in broad daylight when the neighbors were around.

Trial counsel's summation reasonably could not have been interpreted as urging the jury to rely on the factual theory posited during his opening statement. In fact, the prosecutor acknowledged as much when he stated that trial counsel "didn't say that today." (T: 306). There was "no opening salvo," *Young*, 470 U.S. at 12, in trial counsel's summation to which the prosecutor needed to respond. And while the prosecution "may comment on a defendant's failure to call witnesses to support his factual theories," *United States v. Bautista*, 23 F.3d 726, 733 (2d Cir. 1994), trial counsel here did not pursue a defense based on the theory presented in his opening statement. Since trial counsel did not call any witnesses to support that discarded theory, the prosecutor's remarks could not be construed as "fair comment" on the evidence.

Turning to Petitioner's argument that the prosecutor improperly called attention to his decision not to testify, the due process clause "forbids . . . comment by the prosecution

on the accused's silence." *Griffin v. California*, 380 U.S. 609, 615 (1965).  However, the prosecution "may comment on a defendant's failure to call witnesses to support his factual theories." *Bautista*, 23 F.3d at 733.  "A constitutional violation occurs only if either the defendant alone has the information to contradict the government evidence referred to or the jury 'naturally and necessarily' would interpret the summation as a comment on the failure of the accused to testify." *United States v. Bubar*, 567 F.2d 192, 199 (2d Cir. 1977) (quoting *United States ex rel. Leak v. Follette*, 418 F.2d 1266 (2d Cir. 1969)).  Thus, "[t]he test governing whether a prosecutor's statements amount to an improper comment on the accused's silence in violation of the Fifth Amendment looks at the statements in context." *United States v. Knoll*, 16 F.3d 1313, 1323 (2d Cir. 1994) (citing *Bubar*, 567 F.2d at 199).

Here, Petitioner was not the only individual with knowledge about the alleged argument with his girlfriend and the subsequent encounter with his acquaintance and the invitation to go smoke marijuana; either the girlfriend or the acquaintance could have been called to testify about those events.  Although there is a reasonable argument to be made that the prosecutor's comment would not "naturally and necessarily," *Bubar*, 567 F.2d at 199, be interpreted as a reference to Petitioner's decision not to testify, the Court finds the remark was gratuitous and would have been better left unsaid.

### b. The Appellate Division Did Not Unreasonably Apply Clearly Established Supreme Court Precedent

As discussed above, the Court does not agree with the rationales offered by the Appellate Division in support of its finding that the remarks were not improper.  However, that is an insufficient basis on which to award habeas relief.  Because there has been an

adjudication on the merits, the "sole issue" is "whether it was objectively unreasonable" for the Appellate Division "to find that the behavior did not 'so infect[ ] the trial with unfairness' that it deprived [Petitioner] of due process." *Jackson*, 763 F.3d at 148 (quotation marks omitted in original (quoting *Darden*, 477 U.S. at 180)). On the record before it, the Court cannot reach such a conclusion.

Although the trial court overruled the burden-of-proof objection, the prosecutor told the jury several times that Petitioner had no burden of proof and explicitly stated that the burden rested with the prosecution. (T: 305-06). In addition, the trial court properly instructed the jury on the burden of proof, and the jurors are presumed to have followed those instructions. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987). The prosecution presented the jury with a substantial case against Petitioner, including his inculpatory jailhouse phone call to an acquaintance. In addition, the prosecutorial misconduct claim involved a single instance of alleged impropriety in an otherwise fair proceeding.

Given the generalized nature of the applicable standard and in light of the record below, the Court cannot find that the Appellate Division's rejection of this claim was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### E.   *Brady* Violation

Petitioner contends that the prosecutor violated his *Brady* obligations by failing to disclose police reports indicating that 73 Theodore had been broken into several months before the January 9, 2014 incident. Respondent argues that the claim is meritless because Petitioner cannot demonstrate any of the required elements of a *Brady* claim. (Dkt. 6 at

11-12).  Though Petitioner raised the *Brady* claim in the second 440 motion, the trial court did not specifically address it.  (*See* Second 440 Order, Resp't Ex. F).  The Court need not determine whether it was adjudicated on the merits because even under *de novo* review, it cannot provide a basis for habeas relief.  *See Berghuis*, 560 U.S. at 390.

### 1. Legal Principles

*Brady* held that the suppression of evidence favorable to an accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. at 87.  Stated another way, the "three components of a true *Brady* violation" are that "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

"Evidence is favorable to the accused if it either tends to show the accused is not guilty or impeaches a prosecution witness."  *Boyette v. Lefevre*, 246 F.3d 76, 90 (2d Cir. 2001) (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)).  "[F]avorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *Bagley*, 473 U.S. at 682).  However, "[t]he rationale underlying *Brady* is not to supply a defendant with all the evidence in the [prosecutor]'s possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the [prosecutor]."  *United States*

*v. Leroy*, 687 F.2d 610, 619 (2d Cir. 1982).  Thus, "[e]vidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence."  *United States v. Zackson*, 6 F.3d 911, 918 (2d Cir. 1993) (quoting *LeRoy*, 687 F.2d at 618).

### 2.    Application

Petitioner concedes that he learned of the history of break-ins at the time he was arrested when he "overheard" a "conversation" between "the arresting officer and next door neighbor" in which "the neighbor told the officer that her next door neighbor of 13 years had moved out due to constant break-ins" at 73 Theodore.  (Dkt. 1 at 33).  Petitioner acknowledges in his petition that it is "true" that "the history of break-ins at 73 Theodore was part of the testimony offered by the victim at trial, establishing that it was known before trial." (*Id.*).  As discussed above in connection with the ineffective assistance claim, trial counsel extensively cross-examined Zaccaria about the history of break-ins and the steps he had taken to secure the house against intruders.  Because Petitioner knew of the essential facts regarding the previous break-ins and was able to take advantage of them during trial, he has not established that the reports were suppressed.

Trial counsel's cross-examination of Zaccaria effectively apprised the jury of substantially the same information contained in the police reports.  And Petitioner admits that the two police reports he obtained after his conviction are "of the same character" as the information of which he had been aware prior to trial.  (Dkt. 1 at 33).  Because the jury still convicted Petitioner of second-degree burglary of a dwelling, Petitioner has failed to demonstrate that the result of his jury trial would have been different if the reports had been

presented.  Therefore, even assuming for the sake of argument that the prosecutor had withheld the information at issue, Petitioner is unable to demonstrate that prejudice ensued from the prosecutor's failure to furnish Petitioner with copies of the police reports. Accordingly, Petitioner is not entitled to habeas relief on this clam.

## V.  <u>CONCLUSION</u>

For the reasons above, the petition (Dkt. 1) is dismissed.  Because Petitioner has not satisfied the criteria in 28 U.S.C. § 2253(c)(1), (2), the Court declines to issue a certificate of appealability.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      August 16, 2024
            Rochester, New York